# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION



FILED IN OPEN COURT
U.S.D.C. Atlanta

JUN 1 8 2013

James N. Hatten, Clerk
By: Deputy Clerk

UNITED STATES OF AMERICA :
:
v. :
:
DONALD THOMAS :

CRIMINAL INDICTMENT

NO. 1: 13- CR-241

THE GRAND JURY CHARGES THAT:

<u>COUNTS ONE THROUGH SIX</u>
18 U.S.C. § 666
(Theft From an Organization Receiving Federal Funds)

1.    Beginning in or about January 2008 and continuing through in or about June 2011, in the Northern District of Georgia and elsewhere, the Defendant, DONALD THOMAS ("THOMAS"), while employed as Assistant Controller for Grady Memorial Hospital Corporation, did embezzle, steal, obtain by fraud, intentionally misapply and knowingly convert to the use of a person other than the rightful owner money, funds, and property of Grady, an organization that received benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance during the one-year periods described herein, which property was valued at $5,000 or more, and was owned by, and was under the care, custody and control of Grady, as more fully described below.

<u>BACKGROUND</u>

At all times relevant to this indictment:

2.   Grady Health System was one of the largest public health systems in the United States and offered a wide range of medical services, including those of Grady Memorial Hospital, the largest hospital in the state of Georgia.   The majority of Grady Health System's revenue was generated through Medicare and Medicaid reimbursement.

3.   In January 2008, a coalition of state and community leaders created the Grady Memorial Hospital Corporation (hereinafter "Grady"), a nonprofit corporation charged with administering the hospital.   Grady is located at 80 Jesse Hill Jr. Drive Southeast, Atlanta, Georgia, in the Northern District of Georgia.

4.   THOMAS was employed in Grady's finance department as Assistant Controller from December 1994 through June 2011, when his employment was terminated due to a reduction in force.

5.   As Assistant Controller, THOMAS oversaw the operations of Grady's payroll department and had full access to Grady's electronic payroll systems.   THOMAS was also authorized to issue paper payroll checks to Grady employees.

6.   Wachovia Bank, N.A., was acquired by Wells Fargo & Company in 2008, and all of Wachovia's deposit accounts were transferred to Wells Fargo Bank, N.A., following the merger.

2

Wachovia Bank and its successor, Wells Fargo Bank, are collectively referred to herein as "Wells Fargo."

7.   Grady's payroll accounts were held at Wells Fargo.

8.   From at least on or about January 10, 2008, through at least on or about February 3, 2011, Automated Clearinghouse ("ACH") direct deposits from Grady's payroll accounts to Wells Fargo bank accounts of Grady employees were routed through Wells Fargo's ACH transmission facilities either in Philadelphia, Pennsylvania or Jacksonville, Florida.  The transactions were then routed to Wells Fargo's mainframe computer system in Winston-Salem, North Carolina. Wells Fargo did not maintain any ACH processing facilities in the state of Georgia.

<u>THE EMBEZZLEMENT SCHEME</u>

9.   Every two weeks, Grady's human resources department would send a list of terminated employees to THOMAS.  Eligible terminated employees would receive a final payment reflecting the balance of any paid time off ("PTO"), such as vacation days, not used by the employee, up to 320 hours.  Based upon the list, THOMAS queried the payroll system to identify which terminated employees were and were not eligible for PTO.

3

10. Similarly, Grady's human resources department regularly notified THOMAS about terminated Grady employees who were eligible for severance pay or other compensation. The notifications indicated when severance pay or other compensation payments would cease.

11. THOMAS was also able to access details about compensation due to terminated employees on Grady's electronic payroll system.

12. Beginning in or about January 2008, on multiple occasions, THOMAS logged onto Grady's payroll system and added PTO, severance pay or other compensation to the records of certain terminated Grady employees who were not eligible for these additional payments and thus would not be expecting them.

13. On multiple occasions, where certain terminated Grady employees were eligible for PTO, severance pay or other compensation, THOMAS increased the amount of compensation due or extended the time period during which Grady would pay such compensation to the employees. As a result, additional pay was scheduled to be paid out to these terminated Grady employees, and the employees would not be expecting the additional payments.

14. In many instances, within days — and sometimes minutes — of altering the terminated Grady employees' payroll records to ensure that additional compensation would be paid, THOMAS also changed the employees' existing bank account information in the Grady payroll system. The existing bank account information

4

indicated the accounts where the terminated Grady employees had chosen to have their pay direct-deposited. THOMAS deleted the employees' bank account information and replaced it with information for the following bank accounts under the control of THOMAS and his wife ("M.D."):

      a.   Wells Fargo Account Number XXXXXXXXX3791, in the name of Blue Fin Enterprise LLC ("Blue Fin"), a limited liability company created by THOMAS and M.D. on or about November 22, 2007; and

      b.   Wells Fargo Account Number XXXXXXXX0784, in the name of Blue Fin.

15. THOMAS and M.D. were both authorized signers on Wells Fargo Account Nos. XXXXXXXXX3791 and XXXXXXXX0784 (collectively referred to hereinafter as "the Blue Fin Accounts").

16. In some instances, THOMAS altered the terminated Grady employees' payroll records to indicate that the falsified PTO, severance pay or other compensation due was "tax-exempt" in order to prevent federal and state taxes from being withheld on the falsified PTO, severance pay or other compensation.

17. THOMAS sometimes altered the terminated Grady employees' payroll records to indicate that health insurance premiums and other deductions should not be withheld from the falsified PTO, severance pay or other compensation.

18.   In some cases, THOMAS altered the terminated Grady employees' payroll records in order to ensure that the employee would not receive an electronic payroll ("e-payroll") statement indicating that he or she had been paid additional PTO, severance pay, or other compensation from Grady.

19.   On a bi-weekly basis, THOMAS was required to approve the final payroll for all Grady employees. THOMAS was responsible for encrypting the final electronic text file containing Grady's payroll information for each pay period (the "payroll file") and sending it to Wells Fargo via a File Transfer Protocol ("FTP") application, ensuring that all Grady employees were paid. THOMAS transmitted the payroll files to Wells Fargo from a standalone computer in his office that was used solely for that purpose.

20.   The payroll files that THOMAS sent to Wells Fargo reflected the changes that THOMAS had made to the terminated Grady employees' payroll records, including falsified PTO, severance pay, and other compensation for which the terminated Grady employees were not eligible. The payroll files sent to Wells Fargo also included the new bank account numbers input by THOMAS either by changing the bank account numbers in Grady's payroll system or by changing the bank account numbers directly in the payroll files. Both of THOMAS's methods for changing the bank account numbers ensured that the falsified pay that he had created was deposited into the Blue Fin Accounts controlled by THOMAS and M.D.

6

21.  The changes that THOMAS made to the terminated Grady employees' payroll records and to the payroll files were not authorized or approved by Grady, as THOMAS well knew.  Likewise, the terminated Grady employees did not at any time know about or consent to the changes that THOMAS made to their payroll records or to the payroll files, as THOMAS well knew.

22.  From in or about January 2008 through in or about June 2011, THOMAS embezzled over $450,000 from Grady by altering Grady payroll records and the payroll files.  THOMAS used the embezzled funds for his own companies and to pay his and his wife's personal expenses.

23.  In many instances, after the terminated Grady employees' falsified compensation had been finalized in the payroll files or had been deposited into the Blue Fin Accounts controlled by THOMAS and M.D., THOMAS logged onto Grady's payroll system and reversed the changes that he had made to the terminated Grady employees' records, in order to conceal his embezzlement.

24.  In or about February 2012, a former Grady employee contacted Grady to express concern that her federal W-2 Wage and Tax Statement ("W-2 form"), which detailed her earnings for the 2011 tax year, was not accurate.  The employee's W-2 form reflected a higher amount of "wages, tips or other compensation" from Grady than the employee had actually earned or received.  When Grady investigated further, it was discovered that the employee's

7

additional pay had been fabricated by THOMAS and deposited into one of the Blue Fin Accounts.   This initial inquiry led to Grady's discovery of THOMAS's extensive embezzlement scheme. Because THOMAS was not consistent about changing the tax reporting requirements for the fabricated pay, at least twenty former Grady employees received inaccurate W-2 forms as a result of the scheme.

### EXECUTION OF THE EMBEZZLEMENT SCHEME

COUNTS ONE THROUGH THREE
18 U.S.C. § 666
(Theft From an Organization Receiving Federal Funds)

25.   The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 24, as if fully set forth herein.

26.   On or about the dates set forth below in Column B, in the Northern District of Georgia and elsewhere, the Defendant, DONALD THOMAS, who was employed as Assistant Controller of Grady, an organization receiving in the one-year period beginning August 1, 2008, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, did embezzle, steal, obtain by fraud, intentionally misapply and knowingly convert to the use of a person other than the rightful owner money, funds, and property worth at least $5,000 and under the custody and control of Grady, to wit: by falsifying Grady payroll records for the former Grady employees listed in Column C, THOMAS caused the deposit of Grady payroll funds in the amounts set forth in Column

8

D into the Blue Fin Accounts identified in Column E:

| A | B | C | D | E |
|---|---|---|---|---|
| COUNT | DATE | EMPLOYEE | AMOUNT | ACCOUNT NO. |
| 1 | 9/18/08 | S.K. | $10,705.83 | XXXXXXXXX3791 |
| 2 | 4/2/09 | D.P. | $5,624.67 | XXXXXXXXX3791 |
| 3 | 6/11/09 | J.M. | $5,538.05 | XXXXXXXXX3791 |

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

## COUNTS FOUR AND FIVE
## 18 U.S.C. § 666
### (Theft From an Organization Receiving Federal Funds)

27.  The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 24, as if fully set forth herein.

28.  On or about the dates set forth below in Column B, in the Northern District of Georgia and elsewhere, the Defendant, DONALD THOMAS, who was employed as Assistant Controller of Grady, an organization receiving in the one-year period beginning August 1, 2009, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, did embezzle, steal, obtain by fraud, intentionally misapply and knowingly convert to the use of a person other than the rightful owner money, funds, and property worth at least $5,000 and under the custody and control of Grady, to wit: by falsifying Grady payroll records for the former Grady employees listed in Column C, THOMAS caused the

9

deposit of Grady payroll funds in the amounts set forth in Column D into the Blue Fin Accounts identified in Column E:

| A | B | C | D | E |
|---|---|---|---|---|
| COUNT | DATE | EMPLOYEE | AMOUNT | ACCOUNT NO. |
| 4 | 2/4/10 | J.T. | $5,614.51 | XXXXXXXXX3791 |
| 5 | 5/27/10 | M.W. | $5,625.97 | XXXXXXXXX0784 |

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

COUNT SIX
18 U.S.C. § 666
(Theft From an Organization Receiving Federal Funds)

29.   The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 24, as if fully set forth herein.

30.   On or about the date set forth below in Column B, in the Northern District of Georgia and elsewhere, the Defendant, DONALD THOMAS, who was employed as Assistant Controller of Grady, an organization receiving in the one-year period beginning August 1, 2010, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, did embezzle, steal, obtain by fraud, intentionally misapply and knowingly convert to the use of a person other than the rightful owner money, funds, and property worth at least $5,000 and under the custody and control of Grady, to wit: by falsifying Grady payroll records for the former Grady employee listed in Column C, THOMAS caused the

10

deposit of Grady payroll funds in the amount set forth in Column D into the Blue Fin Account identified in Column E:

| A | B | C | D | E |
|---|---|---|---|---|
| COUNT | DATE | EMPLOYEE | AMOUNT | ACCOUNT NO. |
| 6 | 2/3/11 | V.J. | $6,689.79 | XXXXXXXXX3791 |

All in violation of Title 18, United States Code, Section 666(a)(1)(A).


## COUNTS SEVEN THROUGH TWELVE
### 18 U.S.C. § 1343
### (Wire Fraud)

31.  The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 24, as if fully set forth herein.

32.  From in or about January 2008 through in or about June 2011, in the Northern District and elsewhere, the defendant, DONALD THOMAS, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud Grady, and to obtain money and property, by means of materially false and fraudulent pretenses and representations, as more fully described below.

### SCHEME TO DEFRAUD

It was part of the scheme that:

33.  On multiple occasions, THOMAS altered the payroll records of certain terminated Grady employees in order to indicate that such employees were eligible for additional PTO, severance pay and other compensation.  THOMAS well knew that these employees were not

11

eligible for the falsified PTO, severance pay, or other compensation, and THOMAS well knew that Grady had not authorized or approved these changes to the payroll records.

34. After falsifying the amount of PTO, severance pay, or other compensation due, THOMAS replaced the direct deposit bank account information for these employees with the account numbers of the Blue Fin Accounts. As described above, THOMAS made these changes either in the Grady payroll system, or directly in the payroll file that was sent to Wells Fargo. Neither Grady nor the terminated employees authorized THOMAS to change their bank account information for this purpose.

35. THOMAS's changes to Grady's payroll system and to the payroll file ensured that the falsified PTO, severance pay, or other compensation that he had created would result in corresponding payments being deposited into the Blue Fin Accounts controlled by THOMAS and M.D.

36. In many instances, after THOMAS had completed the aforesaid steps necessary to obtain Grady payroll funds under false pretenses, THOMAS reversed the changes that he had made to the terminated Grady employees' payroll records, in order to conceal his fraud.

12

EXECUTION OF THE SCHEME TO DEFRAUD

37.   On or about the dates set forth below in Column B, in the Northern District of Georgia and elsewhere, the defendant, DONALD THOMAS, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses and representations, did cause to be transmitted in interstate commerce, by means of a wire communication, certain writings, signs, signals and sounds, that is, Automated Clearinghouse ("ACH") direct deposits of Grady payroll funds for the former Grady employees listed in Column C, in the amounts set forth in Column D, from Grady's payroll accounts at Wells Fargo into the Blue Fin Accounts identified in Column E:

| A | B | C | D | E |
|---|---|---|---|---|
| COUNT | DATE | EMPLOYEE | AMOUNT | ACCOUNT NO. |
| 7 | 9/18/08 | S.K. | $10,705.83 | XXXXXXXXX3791 |
| 8 | 4/2/09 | D.P. | $5,624.67 | XXXXXXXXX3791 |
| 9 | 6/11/09 | J.M. | $5,538.05 | XXXXXXXXX3791 |
| 10 | 2/4/10 | J.T. | $5,614.51 | XXXXXXXXX3791 |
| 11 | 5/27/10 | M.W. | $5,625.97 | XXXXXXXXX0784 |
| 12 | 2/3/11 | V.J. | $6,689.79 | XXXXXXXXX3791 |

All in violation of Title 18, United States Code, Section 1343.

COUNTS THIRTEEN AND FOURTEEN
18 U.S.C. § 1344
(Bank Fraud)

38.   The Grand Jury re-alleges and incorporates by reference
Paragraphs 2 through 24, and Paragraphs 33 through 36, as if fully
set forth herein.

39.   On or about the dates set forth below in Column B, in the
Northern District of Georgia and elsewhere, the Defendant, DONALD
THOMAS, did devise and knowingly execute and attempt to execute a
scheme and artifice to defraud Wells Fargo, a financial
institution, the deposits of which were then insured by the Federal
Deposit Insurance Corporation, and to obtain the moneys, funds and
property owned by and under the custody and control of Wells Fargo
by means of materially false and fraudulent pretenses, to wit: (1)
THOMAS altered payroll records of the former Grady employees
identified in Column C to indicate falsely that the employees were
eligible for additional PTO; (2) THOMAS caused paper checks to be
issued from Grady to said employees for the falsified PTO, in the
amounts set forth in Column D; (3) THOMAS deposited the paper
checks issued to the former Grady employees into the Blue Fin
Accounts at Wells Fargo identified in Column E; and (4) before
depositing the checks, THOMAS forged the signatures of said
employees on the backs of the checks in order to endorse them,
without the former Grady employees' knowledge or consent.

14

| A | B | C | D | E |
|---|---|---|---|---|
| COUNT | DATE | EMPLOYEE | AMOUNT | ACCOUNT NO. |
| 13 | 12/31/09 | S.N. | $3,170.89 | XXXXXXXXX3791 |
| 14 | 1/8/10 | J.N. | $4,098.39 | XXXXXXXXX3791 |

All in violation of Title 18, United States Code, Section 1344.

### FORFEITURE PROVISION

40. Upon conviction of one or more of the offenses alleged in Counts One through Fourteen of this Indictment, defendant DONALD THOMAS shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s), including but not limited to the following:

a. A money judgment.

41. Upon conviction of the offenses alleged in Counts Thirteen and Fourteen of this Indictment, defendant DONALD THOMAS shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including, but not limited to:

a. A money judgment.

42.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982, and 28 U.S.C. § 2461(c).

A _____ True _____ BILL

_____ FOREPERSON _____ 6/18/13

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

SHANYA J. DINGLE
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 159277

G. SCOTT HULSEY
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 377480

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6000