UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,       )
                                )       CRIMINAL ACTION FILE NO.
                                )       1:13-CR-241-CAP-LTW
        v.                      )
                                )
DONALD THOMAS,                  )
                                )
        Defendant.              )

## MAGISTRATE JUDGE'S ORDER, REPORT AND RECOMMENDATION, AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is presently before the Court on the following motions:

1.    Defendant's Preliminary Motion to Suppress Evidence and Statements. Doc. [13];

2.    Defendant's Request for a Bill of Particulars.  Doc. [14];

3.    Defendant's Particularized Motion for Disclosure of Exculpatory and Impeaching Information and Certain Jencks Material.  Doc. [19]; and

4.    Defendant's Motion for Pretrial Disclosure of Government Witnesses and Exhibit List.  Doc. [20].

The Government filed responses in opposition to each of Defendant's motions, Doc. Nos. [21, 22, 25] except Defendant's Request for a Bill of Particulars,[1] to which Defendant replied.  Doc. Nos. [29, 30].  Having considered Defendant's motions, the

---

[1]   The Government orally responded to Defendant's Request for a Bill of Particulars at the Court's July 23, 2013 Pretrial Conference.  Doc. [16].

parties' briefs, and all supporting documents submitted, and for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Preliminary Motion to Suppress Evidence and Statements be **DENIED**.  Doc. [21].  Additionally, Defendant's remaining motions are **DENIED**.  Doc. Nos. [14, 19, 20].  Lastly, as there are no remaining issues to be resolved, this case is certified ready for trial.

**DEFENDANT'S PRELIMINARY MOTION TO SUPPRESS
EVIDENCE AND STATEMENTS**

**I.**   **BACKGROUND**

**A.**   **Defendant's Indictment**

On June 18, 2013, a fourteen-count indictment was filed against Defendant Donald Thomas (hereinafter "Defendant") charging him with six counts of theft from an organization receiving federal funds (18 U.S.C. § 666), six counts of wire fraud (18 U.S.C. § 1343), and two counts of bank fraud (18 U.S.C. § 1344).

**B.**   **Defendant's Civil Lawsuit**

On August 3, 2011, Defendant, who is black and from Guyana, and his wife, Mary Derheimer, who is white, filed an employment discrimination action for claims arising out of the termination of their employment from Defendant Fulton-DeKalb Hospital Authority d/b/a Grady Health System and Grady Memorial Hospital Corporation (collectively referred to as "Grady") as part of a reduction in force.  Mary Derheimer and Donald Thomas v. Fulton-DeKalb Hosp. Auth., No. 1:11-cv-2554-CC-LTW (N.D. Ga. Aug. 3, 2011), Doc. [1].  On March 5, 2012, Grady's counsel served a

2

subpoena on Wells Fargo for two bank accounts purportedly affiliated with the name "N. Ward." Doc. [26-1]. On March 8, 2012, Defendant Thomas and his wife filed a motion to quash the subpoena, acknowledging that Defendant Thomas was the owner of the two accounts, and raising a Fifth Amendment privilege against self incrimination claim. Specifically, Defendant argued the nonparty bank's release of the banking records could be incriminating to him and could constitute independent information that could possibly be used in a subsequent criminal prosecution against him. Doc. [24]. On March 13, 2012, this Court denied Defendant and his wife's motion to quash the subpoena to Wells Fargo Bank. Doc. [28]. On April 16, 2012, this Court granted the parties' Stipulated Protective Order limiting the dissemination of documents and things containing proprietary and/or confidential information produced by the parties to each other. Doc. [45]. The Stipulated Protective Order governed only the civil pretrial proceedings. (Id.).

**C.   Defendant's Motion to Suppress**

In this case, Defendant seeks to suppress evidence obtained in violation of his Fourth, Fifth, and Sixth Amendment rights. Defendant alleges that after he filed his civil suit in this Court, Grady hired the law firm of Alston & Bird to perform a full and sifting review of any and all activity of Defendant and his wife. Defendant contends that through contacts Grady had with Wells Fargo, Grady illegally obtained access to

3

bank accounts owned and/or controlled by Defendant in violation of bank secrecy laws.[2] Defendant also contends that after illegally obtaining information and documentation regarding alleged criminal conduct by him, Grady turned all such information and documentation over to the United States Attorneys' office for prosecution. Defendant further contends that this entire case, however, was premised on the initial illegal conduct and search initiated by Grady. Under such circumstances, Defendant argues all evidence which flows from the initial illegality, including the discovery of bank accounts owned or controlled by him, the documents, witnesses, all must be suppressed. In response, the Government argues Defendant's request for an evidentiary hearing and his motion to suppress should be denied.

This Court finds that Defendant's Motion to Suppress Evidence falls short of the requirement that "[a] motion to suppress must in every critical respect be sufficiently

---

[2] The only purported evidence that the Defendant has provided in support of his allegation is a document that the Government asserts it produced in discovery, which the Defendant contends is a Government "memoranda" regarding Grady's alleged improper communications with Wells Fargo. See Doc. [13-2]. The Government explains that the document is not a Government memo acknowledging wrongdoing by Grady or Wells Fargo. Instead, the Government contends that the one page document is actually an anonymous letter that was received by the FBI. The unsigned and undated document at issue, which was attached to Defendant's Motion to Suppress, purports to provide information regarding the case between Grady and Mary Derheimer and Donald Thomas. Id. The document indicates the banking records upon which this case is based were obtained outside the subpoena process. Id. The document alleges Grady used their contact at Wells Fargo to obtain the banking records before the subpoena was issued. Id. The document then identifies two Grady attorneys and an employee of Wells Fargo as people involved in the obtaining of the records. Id. This Court notes that the anonymous letter is insufficient standing alone to warrant a hearing.

definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000). Instead, Defendant's Motion to Suppress offers conjecture, speculation, and unsubstantiated allegations against Grady and its attorneys, but not the United States Attorneys' Office or any of its agents or instrumentalities. Even the anonymous note, attached to Defendant's motion to suppress does not point to any wrong doing by any agent or instrumentality of the United States Attorneys' Office or the FBI. Thus, Defendant's Motion to Suppress and his Reply to the Government's responses to his motion fail to allege sufficient facts to warrant an evidentiary hearing under United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985).

### 1.   Grady's Alleged Violation of the Stipulated Protective Order in a Prior Civil Case Does not Require Suppression of Evidence

Defendant alleges Grady sought and subpoenaed from Wells Fargo his bank records and the records of corporations owned and controlled by him during the prior civil case. Defendant also asserts that prior to Wells Fargo providing the responsive documents, the parties entered into a Stipulated Protective Order. Defendant contends, without support, that Grady already knew the information in the subpoenaed records from having obtained the same from the banking institutions illegally. According to the Defendant, Grady, after illegally obtaining information and documentation regarding Defendant's alleged criminal conduct, turned all such information and documentation over to the United States Attorneys' Office for prosecution. Lastly, Defendant argues

5

because Grady is a government entity, a federal prosecution may not proceed with evidence obtained illegally by another government body.

Although no reported case discusses the precise issue involved here, an examination of general principles demonstrates that Defendant is not entitled to the relief he seeks.  First, the Court notes that the Fulton-DeKalb Hospital Authority ("FDHA") is an instrumentality of Fulton and DeKalb Counties.  See Fulton-DeKalb Hospital Authority v. Gaither, 241 Ga. 572, 247 S.E.2d 89 (1978).  However, Grady Memorial Hospital Corporation, Plaintiff's employer, is a nonprofit corporation.[3]  Thus, as a private actor, Grady Memorial Hospital cannot be considered an instrument or agent of the FBI and/or the United States Attorneys' Office.  Similarly, under the facts of this case, this Court also finds that the Fulton-DeKalb Hospital Authority is also not an instrument or agent of the FBI and/or the United States Attorneys' Office as more fully discussed below.

Second, Defendant has not provided nor is this Court aware of any precedent that

---

[3] Grady Health System was originally owned and operated by the City of Atlanta.  In 1941 the Georgia General Assembly approved the concept of the Fulton-Dekalb Hospital Authority, a separate government entity composed of appointed board members who are jointly responsible for the health systems operations.  Pursuant to constitutional provisions and a special amendment to Art. VII, Sec. VII, Par. I of the Constitution of 1877 (Ga. L. 1943, p. 18 et seq.; Code Ann. s 2-7002), the Fulton DeKalb Hospital Authority, entered into a contract with Fulton and DeKalb counties in 1945 whereby the hospital authority acquired and was to operate Grady Memorial Hospital as an instrumentality of Fulton and DeKalb counties.  In January 2008, the Grady Memorial Hospital Corporation, a nonprofit organization charged with administering the hospital was created.  See http://www.gradyhealth.org/learn-about-us; Lee, Cathy, "Grady Health System." New Georgia Encyclopedia ( Nov. 6, 2013).

allows a Defendant in a criminal prosecution to suppress evidence seized in violation of a consent protective order entered into by another party in a civil case. Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Upon a showing of good cause, the court may forbid the disclosure or discovery of certain information, or limit the scope of the disclosure or discovery to certain matters or persons. Fed. R. Civ. P. 26(c)(1)(A)(D)(E). Upon entry of a protective order under Rule 26(c), however, the parties' dissemination and use of confidential information is controlled by the terms of the protective order, and the parties must comply with the terms of the protective order or subject themselves to possible sanctions. Fed. R. Civ. P. 26(c)(3) provides that Rule 37(a)(5) applies to any award of fees and expenses related to a motion for protective order. Fed. R. Civ. P. 37(a)(5).

Defendant Thomas contends that the documents Grady received from his banks were shared with the FBI and/or other agents of the Department of Justice and ultimately the United States Attorneys' Office. Assuming, without deciding, that Defendant's allegations are correct and Grady violated this Court's protective order, Defendant's remedy for said breach lies in Fed. R. Civ. P. 37, and not in suppressing evidence of alleged criminal conduct in this case. Instead of investigating Grady's alleged violation of the Stipulated Protective Order and then seeking sanctions pursuant to Rule 37, Defendant Thomas elected to dismiss his civil case shortly after Grady received documents from Wells Fargo and 1st Choice Credit Union pursuant to a

7

subpoena.  See No. 1:11-cv-2554-CC-LTW (N.D. Ga. Aug. 3, 2011), Doc. Nos. [46, 56].  Despite Defendant's argument that the Government should not be permitted to profit from its receipt of evidence obtained either knowingly or unknowingly in violation of a Court's order, Defendant has failed to allege any misconduct and/or violation of his constitutional rights by any agent of the Government.  Because neither the United States Attorneys' Office, nor any agent or instrumentality of the Government was a party to or associated with Defendant Thomas's civil suit, any violation of the protective order by Grady or Grady's attorneys cannot be imputed to the Government in this criminal prosecution.  Accordingly, Defendant's motion to suppress based on the allegation that Grady and its attorneys violated a protective order in a civil case should be denied.

**2**.     **Defendant Cannot Show that his Fourth Amendment Rights Were Violated When Grady Provided the Government With his Bank Records**

Defendant Thomas also argues evidence in this case should be dismissed because his Fourth Amendment rights were violated.  This Court finds that Defendant's arguments pursuant to the Fourth Amendment fail for two reasons.  First, Grady and its attorneys, under the facts of this case, were not acting as agents of the United States Attorneys' Office or the FBI.  Additionally, Defendant, as a bank customer, has no reasonable expectation of privacy in bank records.

8

i.   Grady and Grady's Attorneys are not Agents of the United States's Attorney's Office or the FBI

Even if the Fulton-DeKalb Hospital Authority and/or its attorneys are considered instrumentalities of local governments, Defendant's Fourth Amendment claim still fails. The Eleventh Circuit has enunciated a test for evaluating when a private actor is considered to be an agent of the government.  The Eleventh Circuit has held that: "A search by private persons does not implicate the Fourth Amendment unless he acts an instrument or agent of the government.  For a private person to be considered an agent of the government, we look to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." (citations omitted).  U.S. v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003).

Neither Grady nor its employees and attorneys can be considered a "government agent" under the Steiger formulation of the applicable test.  Rather, that test, as formulated in the opinion, is expressed in terms of the private actor's relation to "the government."  This means it applies to government prosecutors and law enforcement agencies.  The police or prosecutors must "instigate, orchestrate, encourage or exceed the scope of the private search to trigger application of the Fourth Amendment." United States v. Souza, 223 F.3d 1197, 1201-02 (10th Cir. 2000); see also United States v. Hyatt, 383 F. App'x 900, 906 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted) ("The Fourth Amendment proscribes only governmental action-accordingly,

9

it does not apply to a search conducted by a private individual, even if that search constitutes an invasion of another individual's privacy"); United States v. Ford, 765 F.2d 1088, 1089-90 (11th Cir. 1985) (holding that the district court properly denied a motion to suppress where there was no evidence that the government "had any pre-knowledge of the search [or] that the agents openly encouraged or cooperated in the search") (per curiam); United States v. Davis, No. 08-80119-CR, 2009 WL 150663, at *2-3 (S.D. Fla. Jan. 21, 2009) (internal marks omitted) (quoting United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L.Ed.2d 85 (1984) (citation omitted)) ("The Fourth Amendment proscribes only governmental action - it is 'wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official.'").  Here, the Defendant has not alleged that any county, state, or federal law enforcement officer, agency, or attorney had any pre-knowledge of or participated in any alleged illegal search and seizure of Defendant's personal and corporate bank records.

ii.   Defendant does not have a Reasonable Expectation of Privacy in his Bank Records

Defendant's Fourth Amendment claim also fails because he does not have an expectation of privacy in his bank records to trigger the protection afforded by the Fourth Amendment.  Almost forty years ago, the Supreme Court established that the Fourth Amendment does not protect a customer's banking records, as the customer has

no reasonable expectation of privacy in bank records.  In <u>United States v. Miller</u>, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), a criminal defendant moved to suppress copies of checks and other bank records obtained by means of allegedly defective subpoenas served upon two banks.  The Fifth Circuit found that a depositor's Fourth Amendment rights are violated when bank records maintained pursuant to the Bank Secrecy Act are obtained by means of a defective subpoena and that any evidence so obtained must be suppressed.  425 U.S. at 437.  The Supreme Court reversed, holding that bank records are the property of the bank, not the customer, and that the customer has no legitimate expectation of privacy in such records.  <u>Id.</u> at 443.  "Since no Fourth Amendment interests of the depositor are implicated here, this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued."  <u>Id.</u> at 444.  <u>Miller,</u> which has never been overruled or even questioned, firmly establishes that a bank customer has no Fourth Amendment protection for his bank records and that the Constitution is simply not involved even when the Government procures such records from the bank.  In this case, the bank records were subpoenaed and/or allegedly otherwise obtained, even if unlawfully, by Grady and its counsel.  Based on the foregoing, this Court cannot conclude that the Government infringed Defendant's Fourth Amendment rights.

AO 72A
(Rev.8/82)

### 3.   The Right to Financial Privacy Act Also Does Not Provide a Basis for Suppression

Defendant also argues evidence in this case should be suppressed because the actions of his bank and/or the Government violated his right to privacy.  In response, the Government contends that Defendant's argument pursuant to the Right to Financial Privacy Act fails because the Act does not authorize suppression of evidence as a remedy.  This Court agrees.

In response to the Miller case, *supra*, Congress passed the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422 ("RFPA").  While acknowledging that the customer has no constitutionally protected privacy interest in bank records, Congress sought to establish some statutory protection on behalf of bank customers.  See H.R. Rep. No. 95-1383, at 33-34 (1978) reprinted in 1978 U.S.C.C.A.N. 9273, 9305-06; see generally Neece v. Internal Revenue Serv., 922 F.2d 573, 574-75 (10th Cir. 1990).  The RFPA generally prohibits financial institutions from producing customer records to a government agency except pursuant to consent, search warrant, valid administrative summons, or other enumerated process designed to allow the customer an opportunity to challenge production of the records prior to their release.  See 12 U.S.C. § 3402.  The RFPA, under its civil penalties provision, allows for an award of damages against an "agency or department of the United States or financial institution" and provides the financial institution with a good-faith defense.  12 U.S.C. §§ 3417(a), (c).  The RFPA also provides for disciplinary action against agents or employees of a department or

12

agency for a "willful or intentional violation" of the Act.  12 U.S.C. § 3417(b).  The Act goes on to provide that the "remedies and sanctions" for violation of the Act "shall be the only authorized judicial remedies and sanctions."  12 U.S.C. § 3417(d).  Relying on this provision, the federal courts universally hold that the damage remedy specified in 12 U.S.C. § 3417(a) is the exclusive remedy against the government and that a violation of the RFPA does not authorize a court to suppress or exclude evidence.  See, e.g., United States v. Daccarette, 6 F.3d 37, 52 (2d Cir. 1993); United States v. Davis, 953 F.2d 1482, 1496 (10th Cir. 1992); United States v. Kington, 801 F.2d 733, 737 (5th Cir. 1986); United States v. Frazin, 780 F.2d 1461, 1466 (9th Cir. 1986).  Because suppression is not a remedy for a violation of the RFPA or a violation of a protective order in a civil case and because even if the Court afforded Defendant a hearing, Defendant cannot demonstrate that he had a reasonable expectation of privacy in his bank records under the Fourth Amendment, Defendant's Motion to Preliminary Motion to Suppress Evidence and Statements should be **DENIED** and a hearing on the matter is not warranted.  Doc. [13].

## DEFENDANT'S MOTION FOR PRETRIAL DISCLOSURE OF GOVERNMENT WITNESSES AND EXHIBIT LIST

In Defendant's Motion for Pretrial Disclosure of Government Witnesses and Exhibit List (Doc. 20), Defendant contends that the Government should be required to provide its final lists of witnesses and exhibits sixty days prior to the start of the trial. Defendant argues in support that if early disclosure were not required, he would be

13

prejudiced at trial because under the Government's theory, Defendant accessed Grady Hospital's payroll system and changed payroll information for many Grady employees but the Indictment does not specify the individuals whose records were changed, who accessed the payroll system, or the actual hours, pay, and vacation to which each employee was entitled.  Defendant further contends that he cannot find this information on his own because there are far too many current and former employees at Grady and the case is complex and has voluminous discovery.  Defendant further contends that the Government's voluminous discovery does not provide detailed data as to how it was determined that the data entered on employees were false or how changes made to employee records can be attributed to Defendant.  In addition, Defendant argues that forcing the Government to provide a witness and exhibit list would focus preparation for trial and reduce confusion while "defense counsel furiously flips through discovery notebooks to find exhibits and witness statements."

In response, the Government argues that it should not be required to provide witness and exhibit lists more than one week prior to trial and that the criminal rules and case law do not require advance disclosure of witness lists and exhibits without Defendant's showing of a particularized need.  The Government contends that Defendant cannot demonstrate a particularized need in this case because he not only worked in Grady's finance department for fifteen years, but he also worked with all of the individuals who would potentially testify against him.  According to the Government, potential witnesses from Grady consists solely of employees who have

intimate knowledge of the workings of Grady's payroll procedures and electronic payroll systems, who number no more than ten, and Defendant is in a better position than the Government to identify those employees. The Government argues that it should not be required to provide a list of its exhibits because it has provided Defendant with a spreadsheet detailing the 145 instances in which Defendant created falsified compensation for Grady employees and caused funds to be deposited into his own accounts. The spreadsheet specifies the date of the deposit, the bank account in which the money was deposited, the amount of the deposit, and the name of the employee that was given to the bank for each deposit. For each alleged unlawful transaction, the Government provided a cover sheet highlighting 1 of the 145 transactions and following it with supporting documentation which includes records from the Grady payroll system, records from Grady's human resources paper files, and Defendant's bank records.

Based on applicable law, the Government does not have a general duty to disclose a list of its witnesses or information about those witnesses prior to trial. United States v. Cerpas, 397 F. App'x 524, 528 (11th Cir. 2010); United States v. Johnson, 713 F.2d 654, 659 (11th Cir. 1983). It is in the Court's discretion to decide whether the Government should be required to produce a list of its witnesses in advance of trial. United States v. Colson, 662 F.2d 1389, 1391-92 (11th Cir. 1981); United States v. Elder, No. 1:10-CR-132-RWS-AJB, 2010 WL 5656687, at *6 (N.D. Ga. Dec. 16, 2010). Barring unfairness of sufficient gravity, a defense counsel is not entitled to know in

advance of trial who will testify for the Government.  United States v. Davis, 888 F.2d 1392, 1989 WL 134194, at *2 (6th Cir. 1989) (rejecting defendant's argument that the identities of the Government's testifying witnesses must be disclosed because "it would have enabled him to more readily attest to his whereabouts on the dates in question and would have enabled him to more effectively challenge witness credibility" because unfairness to defendant must be far greater than what the defendant alleged); Elder, 2010 WL 5656687, at *5 (holding that the Federal Rules of Criminal Procedure do not "requir[e] the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is required sooner by Brady or Giglio").   In that vein, such information must be material to the Defendant's defense.  Elder, 2010 WL 5656687, at *5; see also United States v. Prater, 562 F. App'x 859, 865 (11th Cir. 2011) (concluding that Government's failure to include witness on pretrial witness list did not violate defendant's rights where there was no showing that defendant's trial strategy would have differed had witness had been disclosed); Colson, 662 F.2d at 1391-92.

This Court cannot conclude that Defendant is entitled to the Government's witness list more than seven days in advance of trial.  As explained by the Government and not challenged by the Defendant, the Government's witness list does not consist of the whole roster of former and current Grady employees.  The Government's list of Grady employee witnesses is "almost entirely" limited to those no more than ten employees who have intimate knowledge of the workings of Grady's payroll procedures

and systems. Moreover, Defendant does not dispute the Government's argument that he should be able to identify the relevant witnesses himself because he worked in the Grady finance department for over fifteen years and served as the head of Grady's payroll department for years. Under these circumstances, it appears to this Court that the Government's agreement to produce its witness list seven days in advance of trial is reasonable and does not infringe on the Defendant's rights. Colson, 662 F.2d at 1392 (finding that because the government's main witnesses were persons with whom the defendant had significant personal or financial relations, disclosure of the witness list would not have materially aided in the defense). Accordingly, Defendant's request for a witness list sixty days in advance of trial is **DENIED**.

Additionally, Defendant is not entitled to the Government's exhibit list sixty days in advance of trial. Rule 16 of the Federal Rules of Criminal Procedure does not entitle a Defendant to pretrial disclosure of the government's exhibit list. United States v. Prince, 618 F.3d 551, 562 (6th Cir. 2010); United States v. Lewis, 594 F.3d 1270, 1280-81 (10th Cir. 2010) (concluding that no procedural rule or statute required pretrial disclosure of exhibit lists); Fed. R. Crim. P. 16(E). Thus, the Defendant must demonstrate some specialized need for an exhibit list that would justify a leap beyond the normal bounds of pretrial discovery. United States v. Kincaid, No. 3:10-CR-160-1, 2013 WL 5488524, at *8 (E.D. Tenn. Oct. 2, 2013); United States v. Koning, No. 4:09CR3031, 2010 WL 5798551, at *23 (D. Neb. Dec. 17, 2010), R&R rejected on other grounds in United States v. Koning, 2011 WL 532291 (D. Neb. Feb. 8, 2011);

17

Virgin Islands v. Gagliani, No. ST-08-CR-389, 2009 WL 1834569, at *2 (VI June 11, 2009); United States v. Cook, 348 F. Supp. 2d 22, 22 (S.D.N.Y. 2004) (refusing to require the Government to produce its exhibit list because defendant did not show that disclosure of documents was voluminous or that Defendant's review of all of the documents would be so burdensome that it is necessary to require the Government to designate which items would be introduced); United States v. Valerio, 737 F. Supp. 844, 847 (S.D.N.Y. 1990) (concluding that the defendant is not entitled to advance disclosure of exhibit lists unless he demonstrates particularized need for them).  It is in the Court's discretion to require pretrial disclosure of exhibits to be used at trial.  Prince, 618 F.3d at 562.

Defendant has not persuaded this Court that there is any particularized need for early disclosure of the Government's exhibit list.  The Government indicates that it has already provided to Defendant supporting documentation for each of the 145 instances where Defendant allegedly falsified compensation for other Grady employees and deposited the proceeds into his own account.  Given the Government's advanced production of documents detailing each allegedly false transaction, this Court cannot conclude that Defendant has a particularized need for advance disclosure of the Government's exhibit list.  Lewis, 594 F.3d at 1281 ("What is most important to trial preparation is not a list of documents but the availability of the documents themselves.").  Therefore, this Court concludes that the Government's offer to produce the exhibit list seven days before the trial is reasonable, and Defendant's request for

disclosure sixty days in advance of trial is not warranted.  Accordingly, Defendant's Motion for Pretrial Disclosure of Government Witnesses and Exhibit List is **DENIED**. Doc. [20].

### DEFENDANT'S PARTICULARIZED MOTION FOR DISCLOSURE OF EXCULPATORY AND IMPEACHING INFORMATION AND CERTAIN JENCKS MATERIAL

In Defendant's Particularized Motion for Disclosure of Exculpatory and Impeaching Information and Certain Jencks Material (Doc. 19), Defendant contends that the government should be directed to make an inquiry and disclose the following information either in the Government's possession or could be accessed by the Government:

1.   The identity of any individuals who could access Grady's payroll computers and payroll system during the time Defendant is alleged to have altered records and made improper payments from the Grady payroll system to himself or entities on his behalf.

2. The User DTIs used by each employee in the payroll department during the time frame Defendant allegedly accessed the payroll system to commit the offenses detailed in the Indictment.

3.  Whether any information shows that after Defendant's termination, other employees' W-2s and payroll records were incorrect.

4.   Personnel files of each employee with access to the Grady payroll system during the time period of Defendant's alleged crimes.

5. Computer data showing changes in the Grady payroll system during the time frame the government alleges Defendant committed crimes.

6. Login and payroll access information for two computers other than the computer in Defendant's work station, including the identity of all individuals who accessed the computers.

7.  Evidence or lack of evidence as to who actually generated each transaction the government alleges has resulted in improper payments to Defendant or entities on his behalf as well as any changes in the system to mask such payments.

8.  Statements or evidence constituting <u>Brady</u> or <u>Giglio</u> information which were obtained by counsel for Grady in Defendant's civil discrimination case.

9.  Statements constituting <u>Brady</u> or <u>Giglio</u> information which were obtained by Alston & Bird or others on its behalf in connection with the investigation of the circumstances and facts which resulted in the Indictment.

In response, the Government states, and Defendant does not dispute, that it has already produced all of the items responsive to Request Numbers 2, 5, and 7. Accordingly, Defendant's requests 2, 5, and 7 are **DEEMED MOOT**.

The Government further responds that the Court should deny Defendant's remaining requests because the requested information is in the possession of third parties who are not part of the "prosecution team" and the Government does not possess documents responsive to the requests. The Government argues the information Defendant seeks is in the possession of Grady Hospital, Taylor English Duma LLP, or Alston & Bird LLP and the Government does not have a responsibility to proactively investigate and obtain evidence from these third parties on Defendant's behalf. Defendant does not respond to the Government's argument.

The Jencks Act provides that, on a defendant's motion, a district court shall "order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has

testified." 18 U.S.C. § 3500(b); <u>United States v. Naranjo</u>, 634 F.3d 1198, 1211-12 (11th Cir. 2011).  "A statement is in the United States' possession for Jencks Act purposes if it is in the possession of a federal prosecutorial agency.  <u>Naranjo</u>, 634 F.3d at 1211 (citing <u>United States v. Cagnina</u>, 697 F.2d 915, 922 (11th Cir. 1983)).

Additionally, in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held that the Due Process Clause requires prosecutors to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  <u>Id.</u> at 87, 93.  "As with the Jencks Act, <u>Brady</u> applies only to information possessed by the prosecutor or anyone over whom he has authority."  <u>Naranjo</u>, 634 F.3d at 1212.  Usually documents within the possession of a federal court or probation officer, a state court, local law enforcement officers, or other state authorities are not considered to be within the possession of the Government.  <u>United States v. Brazel</u>, 102 F.3d 1120, 1150 (11th Cir. 1997).  The Government, for instance, has only been ordered to disclose material possessed by state investigators when federal and state authorities pooled their investigative energies to a considerable extent or the state investigators functioned as agents of the federal government under the principles of agency law.  <u>Naranjo</u>, 634 F.3d at 1212.  But where separate investigative teams do not collaborate extensively, knowledge of information of other investigative teams is not imputed to federal investigators for <u>Brady</u> purposes.  <u>Naranjo</u>, 634 F.3d at 1212.  Defendant does not present any argument that the Government acted with Grady, Taylor English Duma LLP, or Alston & Bird LLP as part

21

of the same investigative team, that the Government directed their activities with regard to Defendant, or that the Government has any authority over these entities. Accordingly, the Government is not required to produce documents responsive to Defendant's requests 1, 3, 4, 6, 8, and 9, and Defendant's Particularized Motion for Disclosure of Exculpatory and Impeaching Information and Certain Jencks Material is **DENIED**.  Doc. [19].

### DEFENDANT'S REQUEST FOR A BILL OF PARTICULARS

In Defendant's Request for a Bill of Particulars, Defendant seeks more detailed information about specific instances where employee payroll records were altered with the proceeds deposited into bank accounts controlled by Defendant. In addition, the Defendant seeks to have the Court order the Government to identify (1) what it means by "elsewhere" when the Government states in the Indictment that instances of fraud occurred in the Northern District of Georgia and elsewhere (Indictment ¶¶ 1, 26, 28, 30); (2) the federal programs benefitting Grady referenced throughout the Indictment; and (3) the persons who performed any investigation, accounting, or research to determine the employee records had been altered.  At the Pretrial Conference, counsel for the Government indicated that she has already provided extensive discovery to Defendant obviating the need for a bill of particulars.

This Court concludes that the Government should not be required to prepare a bill of particulars in this case.  Pursuant to Federal Rule of Criminal Procedure 7(f), "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f).  The

22

purpose of a bill of particulars is "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)).   A bill of particulars supplements an indictment by providing information *necessary* for a defendant to prepare for trial, and it is not meant to function as a discovery device. Anderson, 799 F.2d at 1441-42; see also United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (stating that a bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial") (citing United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978)); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (quoting Hemphill v. United States, 392 F.2d 45, 49 (8th Cir. 1968), implied overruling on other grounds recognized, United States v. Lattimore, 946 F. Supp. 245, 246 (W.D.N.Y. 1996).   The Court is vested with broad discretion in deciding whether to grant a motion for bill of particulars.  Cole, 755 F.2d at 760; United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981).   However, "where an indictment fails to set forth specific facts in support of the requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request for a bill of particulars may constitute reversible error."  Cole, 755 F.2d at 760; see also United States v. Sharpe, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (noting

23

that an indictment need not allege in detail the factual proof that will be relied upon to support a charge but that failing to grant a motion for a bill of particulars to obtain information essential to the defense may be reversible error); United States v. Rosenthal, 793 F.2d 1214, 1226-27 (11th Cir. 1986) (holding that the government was not required to provide the defendant with the essential facts regarding the formation of a conspiracy or every overt act that might be proven at trial) (modified on other grounds, United States v. Rosenthal, 801 F.2d 378 (11th Cir. 1986)).

In Request Nos. 2, and 4-12, Defendant seeks more detailed information about specific instances where employee payroll records were altered with the proceeds deposited to bank accounts controlled by Defendant. The Government, however, has already provided Defendant with a spreadsheet detailing 145 alleged incidents where Defendant created falsified compensation for Grady employees and deposited the funds into his own accounts. For each transaction, the spreadsheet specifies (1) the date of the deposit; (2) the bank account where the money was deposited; (3) the amount of the deposit; and (4) the names of the employees that were given to the bank for each deposit. (Doc. 22, pp. 3-4). Additionally, for each transaction, the Government provided what it believes is supporting documentation, including records from Grady's payroll system showing the changes made to each employee's compensation and bank account details, Employee Change Sheets which include the payroll changes that were made to conceal fraudulent payments, user names of employees who made each of the payroll changes, records from Grady's human resources paper files, and bank records

24

for accounts under Defendant's control.  Thus, Defendant has largely been provided with documentation and information responsive to his requests.  <u>United States v. Roberts</u>, 174 F. App'x 475, 477-78 (11th Cir. 2006) (noting that "[a] bill of particulars is not required where the information sought has already been provided by other sources, such as the indictment and discovery and it is not designed to compel the government to [provide a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial").  The information supplied provides Defendant with enough information about each alleged fraudulent transaction to enable him to prepare for trial.  It is true that the Government has not specifically indicated that it provided information responsive to Defendant's Request No. 4 regarding lists of terminated employees Grady sent to Defendant, Request No. 5 regarding the terminal Defendant allegedly used to make changes to the payroll records, Request No. 8 regarding the date and time Defendant allegedly logged onto the Grady payroll system to reverse changes made to employee accounts, Request No. 9 regarding the name of a former Grady employee who contacted Grady to express concern that her W-2 was inaccurate in that it reflected a higher amount of wages, tips, or other compensation than she received, and Request No. 13, concerning the persons who performed any investigation, accounting, or research to determine that the employee records had been altered.  A bill of particulars, however, "is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial" and as noted above, the extensive discovery provided by the Government

25

appears to be sufficient to allow Defendant to prepare for trial.  See United States v. Burgin, 621 F.2d 1352, 1359 (5th Cir. 1980).  As for Request No. 3, in which Defendant seeks the identity of the federal programs benefitting Grady referenced throughout the Indictment, this is information which is already available through other sources such as the indictment or discovery and inspection.  Notably, the indictment indicates that the majority of Grady's revenue is generated through Medicare and Medicaid reimbursement.  See Doc. [1].  Finally, as for Request No. 1, in which Defendant requests that the Government explain what it means by "elsewhere" when the Government states in the Indictment that instances of fraud occurred in "the Northern District of Georgia and elsewhere."  This Court finds that the language provided in the indictment is sufficient to inform the Defendant of the location, at least partially, of his alleged fraudulent activity.  See United States v. Harrell, 737 F.2d 971, 975 (11th Cir. 1984); United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983).  Accordingly, Defendant's Motion for a Bill of Particulars is **DENIED**.  Doc. [14].

## CONCLUSION

Based on the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Preliminary Motion to Suppress Evidence and Statements be **DENIED**. Doc. [13]. Additionally, Defendant's remaining discovery motions are **DENIED**. Doc. Nos. [14, 19, 20]. There are no further motions or problems pending before the

undersigned to prevent the scheduling of this case for trial.[4]  Therefore, this action is **CERTIFIED READY FOR TRIAL**.

          **SO ORDERED** this 27th day of March, 2014.


                                   /s/ Linda T. Walker
                                   LINDA T. WALKER
                                   UNITED STATES MAGISTRATE JUDGE

---

[4]  On March 23, 2014, the Government filed a Motion in Limine.  Doc. [37]. The Motion in Limine is **DEFERRED** to the District Court.